COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Petty, Chafin and Senior Judge Annunziata


KRISTA PINTO

                                                            MEMORANDUM OPINION[*]
v.        Record No. 1581-12-4                                   PER CURIAM
                                                            FEBRUARY 26, 2013
FAIRFAX COUNTY DEPARTMENT
 OF FAMILY SERVICES


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Marcus D. Williams, Judge

(Melissa M. Sanchez; Arif & Associates, PC, on brief), for
appellant.

(David P. Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy
County Attorney; May S. Kheder, Assistant County Attorney;
Mario A. Bezzini, Guardian *ad litem* for the minor child, on brief),
for appellee.


        Krista Pinto appeals an order terminating her parental rights to her child.  Pinto argues that

the trial court erred by terminating her parental rights because (1) the Department of Family

Services (the Department) failed to present clear and convincing evidence that the termination was

proper pursuant to Code § 16.1-283(C)(2), and (2) the Department failed to show that termination

was in the best interests of the child.  Upon reviewing the record and briefs of the parties, we

conclude that this appeal is without merit.  Accordingly, we summarily affirm the decision of the

trial court.  See Rule 5A:27.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

In February 2007, the Department first became involved with Pinto and her child. The child was three years old at the time. The Department received a complaint that Pinto was not supervising the child, did not have stable housing, and was abusing illegal substances. Pinto tested positive for marijuana on February 15, 2007 and March 5, 2007. She agreed to voluntary services with Child Protective Services (CPS) in May 2007. Pinto completed an Alcohol and Drug Services (ADS) assessment and was recommended for outpatient treatment, which she participated in sporadically from May through December 2007. Pinto did not successfully complete outpatient treatment because she continued to test positive for marijuana and once tested positive for cocaine.

In January 2008, Pinto's home was destroyed by fire. The Department subsequently obtained protective supervision over the child, since Pinto was unable to maintain a safe and stable home for the child and had not successfully completed her ADS treatment.

In February 2009, Pinto entered a residential treatment program. She was discharged in July 2009 as "max-benefitted," which meant that "she had stayed as long as her benefits would allow for it, but she wasn't able to be successfully discharged because she had not acquired the goals outlined with what the treatment plan said."

In 2009, Pinto completed a mental health evaluation and was diagnosed with post-traumatic stress disorder and acute adjustment disorder with depressed mood. It was recommended that she participate in individual outpatient treatment, individual counseling, and random drug screens.

Pinto subsequently participated in another ADS assessment and attended group therapy sessions three times a week at the Women's Recovery Center.

On March 24, 2011, Pinto admitted that she could not care for the child and there were no suitable family members.[1] On March 31, 2011, the child was removed from Pinto by an emergency removal order. At a subsequent hearing, the juvenile and domestic relations district court (JDR court) held that the child was abused and neglected and awarded custody of the child to the Department.

In June and July 2011, Pinto stopped attending her ADS group meetings. The Department tried to contact Pinto, but was unable to reach her. She was dropped from the program for noncompliance.

In 2012, Pinto's compliance with substance abuse treatment was "sporadic" because she missed several group and individual sessions. The Department offered assistance to Pinto in order for her to be reunited with the child. Pinto was supposed to meet once a week with Amantha Peterson for counseling. From November 9, 2011 through April 2012, Pinto attended six full one-hour sessions with Peterson. Pinto frequently would be late or leave early, or miss, meetings. Peterson testified that she had concern about Pinto's ability to parent the child.

Pinto had supervised visitation with the child and rarely missed a visitation. However, the counselor supervising the visitation did not believe that Pinto was ready for unsupervised visitation because Pinto had difficulty planning meals for the child and could not meet all of the child's needs.

---

[1] The child's father was in a persistent vegetative state due to a gunshot wound to the head. He and his parents were unable to care for the child. None of the maternal relatives were willing and able to care for the child.

The child has progressed in foster care. He regularly attends counseling and is less aggressive. He is active in Cub Scouts and baseball. At trial, the child's foster care worker said that the child was thriving.

On May 29, 2012, the JDR court terminated Pinto's and father's parental rights to the child. Both Pinto and father appealed to the circuit court.

After hearing three days of testimony from numerous witnesses and argument from the parties, the trial court found that termination of Pinto's parental rights was in the child's best interests.[2] On August 15, 2012, the trial court entered orders terminating Pinto's parental rights and approving the foster care plan with the goal of adoption. This appeal followed.

ANALYSIS

*Termination of Parental Rights*

Pinto contends the trial court erred when it terminated her parental rights to the child because the Department failed to present clear and convincing evidence that the termination was proper under Code § 16.1-283(C)(2).

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

The trial court terminated Pinto's parental rights pursuant to Code § 16.1-283(C)(2).[3]

---

[2] The trial court also terminated the father's parental rights. He did not contest the termination and did not appeal the ruling.

[3] A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation

- 4 -

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The trial court noted that the conditions that led to the emergency removal in March 2011 were unstable housing, child neglect, substance abuse, employment instability, and mental health issues. The trial court found that the Department offered "substantial services" to Pinto before and after the child's removal. However, Pinto "has failed to substantially remedy these conditions which have led to [the child] being removed."

Pinto contends she "substantially remedied" her housing and substance abuse issues. The trial court acknowledged that Pinto appeared to have resolved her housing issue, "at least in the short term."[4] As Pinto argued, she made progress with her substance abuse issues, although the trial court found her efforts to be "incomplete."[5]

---

> of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

[4] However, at trial, there was evidence that Pinto's lease was set to expire as of August 2, 2012, and she did not yet have a subsequent lease. She also was behind in her rent payments.

[5] As of the trial, Pinto had not completed her ADS treatment and had not taken the Alcohol Safety Action Program classes for her second driving under the influence conviction in May 2011.

The trial court's main concern was Pinto's inability to parent the child and her lack of progress in that area despite the services offered. The trial court cited Pinto's refusal to accept the child's diagnosis of post-traumatic stress disorder and "her failure to facilitate [the child's] treatment." The trial court also explained that Pinto was "still at the level of supervised visitations" and did not progress due to Pinto's "unwillingness or her opposition" to medication for her mental health issues.

The trial court accepted Pinto's diagnoses of "Mood Disorder, Adjustment Disorder, [and] personality Disorder." Pinto's mental health issues were "complicated by her lack of self-awareness and insight," which affected her ability to take care of herself and her child. Pinto argues that she completed numerous requirements, including a parent/child assessment, a psychological evaluation, and a parenting program. She explained that she could not maintain regular sessions with her counselor because of a fluctuating work schedule. However, the trial court found that Pinto offered "many rationalizations, and while there may have been circumstances on occasion that were beyond her ability to deal with, . . . those were not good reasons why many of the things that should have been accomplished by now have not been accomplished by now."

Upon issuing its ruling, the trial court stated, "So, all in all, substantial progress has not been made, and no good cause has been shown for why it has not been made."

Here, there was significant evidence of services offered to Pinto since the Department first became involved with the family in 2007. The Department offered assistance with substance abuse, parenting, psychological evaluations, group counseling, and individual counseling. Despite the services offered, Pinto was unable to resolve her outstanding issues, especially her mental health issues and ability to care for the child, during the approximately

sixteen months that the child had been in foster care. The trial court did not err in terminating Pinto's parental rights pursuant to Code § 16.1-283(C)(2).

*Best Interests of the Child*

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Pinto contends the trial court erred when it terminated her parental rights because the Department failed to prove that termination was in the best interests of the child. On appeal, Pinto emphasizes her close relationship with her child and the fact that she rarely missed a visitation. She argues that she made substantial progress in her ability to care for her child; however, as noted above, the progress that she made was not enough.

Pinto never advanced to unsupervised visitation. The counselor supervising the visitations expressed concern for Pinto's ability to provide meals for the child and meet his needs. Moreover, the trial court had concerns about Pinto's "ability to organize, to provide stability, to prioritize and to place [the child's] needs first."

The child needed consistency and stability, which he received in foster care, but did not receive with Pinto. There was evidence that the child was improving and was less aggressive. Pinto, on the other hand, still had not addressed her mental health issues and had not completed all of her substance abuse treatment.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Pinto had been offered services over several years, but failed to remedy her issues. Meanwhile, the child was doing well in foster care. Given the circumstances of this case, the

trial court did not err in determining that the Department presented sufficient evidence to prove that termination of parental rights was in the child's best interests.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>